IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. CASARRUBIA-PEREZ


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DANIEL CASARRUBIA-PEREZ, APPELLANT.


Filed August 4, 2026.    No. A-26-031.


Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Kenneth Jacobs, of Hug and Jacobs, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.


PIRTLE, WELCH, and PICCOLO, Judges.

WELCH, Judge.

## I. INTRODUCTION

Daniel Casarrubia-Perez appeals from his plea-based conviction of second degree assault. He contends that the sentence imposed is excessive and that his trial counsel was ineffective for failing to "complete depositions of the witnesses while knowing the State had an uncooperative victim" and advising Casarrubia-Perez that "he would receive a 0 to 4 year sentence." For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On December 24, 2024, Omaha police officers responded to a "shots fired" call. Upon arriving at the scene, officers located spent 9-millimeter casings and spent projectiles, but no victim. While conducting the initial investigation, officers learned of a walk-in shooting victim who had arrived at the emergency room with a bullet wound in his back requiring immediate surgery. This victim was determined to be the victim related to the "shots fired" call.

- 1 -

As part of their investigation, officers reviewed surveillance video from a gas station located down the street from the location where shots had been fired. In the video, officers saw the victim's car enter a parking lot, followed by a Honda Accord driven by Casarrubia-Perez with Braxton Osborn located in the front passenger seat. Both Casarrubia-Perez and Osborn were observed making hand gestures at the victim while Osborn held "the front of his waistband consistent with concealing a firearm." A heated exchange between the parties ensued after which Osborn repositioned himself to the back passenger seat of Casarrubia-Perez' car. The victim then drove away in his vehicle, followed by Casarrubia-Perez in his car with Osborn in the back seat. The "shots fired" call occurred one minute later.

Officers later located the victim's vehicle with a bullet defect in the rear trunk. Officers also spoke with a witness who stated that he had observed a Honda Accord with a party hanging out of the rear passenger side window firing multiple shots. Additionally, the victim indicated to officers that one of the individuals involved in the altercation had attended high school with him and records indicated that Casarrubia-Perez attended high school with the victim. Officers obtained Casarrubia-Perez's cell phone and social media records, which included an Instagram account in which Casarrubia-Perez stated, "No kap," "My car hot RN [right now]," and "I made Omaha Scanner." Another message from Casarrubia-Perez later that evening stated, "That shooting on 27th was me."

As a result of the investigation, the State charged Casarrubia-Perez with first degree assault, a Class II felony; discharge of a firearm at an inhabited house, occupied building or occupied motor vehicle, a Class ID felony; and two counts of use of a firearm to commit a felony, Class IC felonies. Pursuant to a plea agreement, Casarrubia-Perez pled no contest to a reduced charge of second degree assault, a Class IIA felony, and the remaining charges were dismissed. The State provided a factual basis as previously set forth.

During the sentencing hearing, defense counsel stated that, prior to the shooting, an argument ensued between Casarrubia-Perez and the victim, and that Casarrubia-Perez followed the victim's car, thinking that the parties were going to be involved in a fistfight. However, when the victim stopped his car, Osborn began firing shots at the victim. Defense counsel requested that the court consider a sentence of probation, but, if a sentence of imprisonment was imposed, that the sentence be one that is fair "but also allows [Casarrubia-Perez] to get back to his life and start over again and help raise his children."

The State argued that Casarrubia-Perez was not an appropriate candidate for probation based on the seriousness of the offense and that Casarrubia-Perez was the beneficiary of a plea deal "which encompassed the difficulty the State was having in getting a cooperative victim" and that Casarrubia-Perez was "the secondary player" and "Osborn was the primary." The State acknowledged that had the case gone to trial, the State's theory would have been that Osborn was the shooter, and that Casarrubia-Perez was the driver.

During his allocution, Casarrubia-Perez apologized to the victim, the victim's family, and the community for the offense and stated that incarceration has been difficult for his family, and that he wanted to be there for his children.

Following statements by the attorneys and Casarrubia-Perez, the district court noted that in 2020, Casarrubia-Perez had been adjudicated in juvenile court and was sentenced to probation,

which was terminated unsatisfactorily. Accordingly, the court agreed with the State that probation was not appropriate in this case. The court stated:

> Your counsel has done everything possible for you. In fact, he was able to arrange for the State to dismiss three very serious charges here that carry dozens of years in prison. But I can only sentence you on what you were convicted of.
>
> And, given your age, that's a mitigating factor towards the lower end; that a gun was involved, that mitigates towards the higher end; that there was someone actually shot, that's towards the higher end. So I think – again, your attorney has done everything he possibly can. In the end, I'm the one that has to craft the appropriate sentence considering your age, your prior history, the gun, [and] someone being shot.
>
> And I recognize the State said one of the reasons they entered into this plea agreement . . . was there [were] some evidentiary problems, but I don't think there's any question you were involved and someone was shot. So I have crafted a sentence that you'll still be a very young man when you are released, but I do think that a period of incarceration, under the circumstances, is necessary.

The district court sentenced Casarrubia-Perez to 10 to 12 years' imprisonment with credit for 342 days previously served. Casarrubia-Perez has timely appealed and is represented by different appellate counsel.

## III. ASSIGNMENTS OF ERROR

Casarrubia-Perez assigns as error that (1) the sentence imposed is excessive and (2) his trial counsel was ineffective in (a) failing to "complete depositions of the witnesses while knowing the State had an uncooperative victim" and (b) advising Casarrubia-Perez that "he would receive a 0 to 4 year sentence."

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Rejai*, 320 Neb. 599, 29 N.W.3d 225 (2026). It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Montoya*, 29 Neb. App. 563, 957 N.W.2d 190 (2021). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Casarrubia-Perez' first assignment of error is that the sentence imposed is excessive. Specifically, he argues that the district court did not properly consider the sentencing factors as they relate to his mental health, which included his problems with anxiety, depression, mood instability, and impaired stress-coping skills, and his mental state regarding the death of his infant daughter approximately 1½ years prior, as well as his minimal criminal history. He also argues that probation, with specific targeted case management interventions and specialized gang-related terms and conditions, was "more appropriate for an individual who simply drove to what he believed to be a fistfight when he appeared to be unaware that the passenger in his vehicle actually had a firearm." Brief for appellant at 11.

Casarrubia-Perez was convicted of second degree assault, a Class IIA felony. See Neb. Rev. Stat. § 28-309 (Reissue 2016) (second degree assault). His sentence of 10 to 12 years' imprisonment is within the statutory sentencing range for Class IIA felonies, which are punishable by a minimum of no imprisonment and a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024) (felonies; classification of penalties). And Casarrubia-Perez received a substantial benefit from his plea agreement in which a Class ID felony, punishable by a mandatory minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment, and two Class IC felonies, punishable by mandatory minimums of 5 years' imprisonment and a maximum of 50 years' imprisonment, were dismissed. See § 28-105.

In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *State v. Johnson*, 33 Neb. App. 194, 11 N.W.3d 703 (2024). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025). A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Here, at the sentencing hearing, despite Casarrubia-Perez' claims to the contrary, the district court specifically referred to factors that it considered in deciding upon the sentence to be imposed including Casarrubia-Perez' age, his prior unsuccessful discharge from probation, the benefit that he received from the plea agreement, and the serious circumstances of the offense which involved a gun and someone getting shot. And, although the district court did not articulate each sentencing factor, there is no requirement that the court must do so. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021) (sentencing court is not required to articulate on record that it has considered each sentencing factor nor make specific findings as to facts pertaining to factors or weight given them). These arguments are merely a request for this court to conduct its own de

- 4 -

novo review of those factors. It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025).

The presentence investigation report reflected that Casarrubia-Perez was 23 years old, single, with two children. Another child, a daughter, passed away at a young age. Casarrubia-Perez completed 11th grade and had not obtained a GED. Although Casarrubia-Perez had a limited criminal history as an adult, he was unsatisfactorily discharged from juvenile probation. The level of service/case management inventory assessed Casarrubia-Perez as a high risk to reoffend. Casarrubia-Perez also admitted to daily use of marijuana and to selling marijuana. He admitted being a member of the Hilltop Crips gang and stated that he has been shot at more than five times but has never been struck. We note that although Casarrubia-Perez argues that he was unaware that Osborn had a gun, the PSR states that Casarrubia-Perez "was aware that [Osborn] had a gun. . . he did not know that [Osborn] was going to shoot at [the victim]."

Based upon factors, including Casarrubia-Perez' high risk to reoffend, his gang affiliation, his unsatisfactory discharge from juvenile probation, and the seriousness of the offense and injury to the victim, we cannot say the district court abused its discretion in sentencing Casarrubia-Perez to imprisonment rather than probation, nor did the court abuse its discretion in the duration of incarceration. This assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Casarrubia-Perez next contends that his trial counsel was ineffective in (a) failing to "complete depositions of the witnesses while knowing the State had an uncooperative victim" and (b) advising Casarrubia-Perez that "he would receive a 0 to 4 year sentence." Before addressing Casarrubia-Perez' claims, we first review the propositions of law related to ineffective assistance of counsel claims raised on direct appeal.

In *State v. Swartz*, 318 Neb. 553, 566-67, 17 N.W.3d 174, 184-85 (2025), the Nebraska Supreme Court reiterated the propositions of law relative to a defendant's claims of ineffective assistance of counsel made in a direct appeal:

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*[, 318 Neb.] 352, 15 N.W.3d 705 (2025).
>
> Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*[, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)], the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dat*[, 318 Neb.] 311, 15 N.W.3d 410 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for

counsel's deficient performance, the result of the proceeding would have been different. *Id*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.


(a) Failure to Complete Depositions

Regarding Casarrubia-Perez' first claim that his trial counsel was ineffective in failing to "complete depositions of the witnesses while knowing the State had an uncooperative victim," we find that this claim is not stated with sufficient particularity.

As this court recently reiterated in *State v. Hearnes*, 34 Neb. App. 182, 200-01, 33 N.W.3d 766, 784-85 (2026):

In *State v. Rupp*, 320 Neb. 502, 523, 28 N.W.3d 74, 89 (2025), the Supreme Court clarified that assignments of error on direct appeal regarding ineffective assistance of trial counsel, "standing alone," must specifically allege what conduct constituted deficient performance. A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *State v. Rupp, supra*. An assignment is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks. *Id*. Any claim of ineffective assistance of counsel alleging deficient conduct must be more specific than generalities of inadequate preparation or failures to introduce beneficial evidence. See *id*.

To preserve an ineffective assistance of counsel claim on direct appeal, the claim must be stated with particularity in the assignment of error and then separately argued. See *State v. Rupp*, 33 Neb. App. 562, 19 N.W.3d 771 (2025). Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025).

In *State v. Hagens*, 320 Neb. 65, 85, 26 N.W.3d 174, 192 (2025), the Supreme Court found that an assertion concerning "'witnesses'" without any further description or detail in the assignment of error was not sufficiently stated.

The failure of an assignment of error to identify "material witnesses" lacks sufficient specificity. See, *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025) (where claim of ineffective assistance on direct appeal involves uncalled witnesses, defendant must give names or descriptions of any uncalled witnesses forming basis of claim of ineffective assistance of trial counsel); *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022) (when claim of ineffective assistance on direct appeal involves uncalled witness, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve claim). Cf. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025) (when claim of ineffective assistance on direct appeal involves uncalled witnesses, it is sufficient that appellate counsel provides on direct appeal names or descriptions of any uncalled witnesses forming basis of claim of ineffective assistance of trial counsel).

Casarrubia-Perez' assigned error that trial counsel was ineffective in failing to "complete depositions of the witnesses while knowing the State had an uncooperative victim" has not been sufficiently stated. When the claim of ineffective assistance on direct appeal involves uncalled witnesses, the defendant must give the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *State v. Rupp, supra*. This court extended this concept in *State v. Dean*, No. A-21-926, 2022 WL 2812818 (Neb. App. July 19, 2022) (selected for posting to court website) to an assignment of error that asserted counsel was ineffective for failing to depose a "material witness."

Here, Casarrubia-Perez fails to either provide names or descriptions of the individuals that he claims trial counsel should have deposed. A claim insufficiently stated is no different than a claim not stated at all. *State v. Kruger, supra*. And although Casarrubia-Perez does state in his argument that his trial counsel should have deposed "the victim and another witness," "[a]ssignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." *State v. Hagens*, 320 Neb. 65, 85-86, 26 N.W.3d 174, 192 (2025). Accord *State v. Hearnes*, 34 Neb. App. 182, 33 N.W.3d 766 (2026).

In sum, Casarrubia-Perez failed to sufficiently state his claim that his trial counsel was ineffective for failing to depose unnamed "witnesses." Accordingly, this claim is not preserved for postconviction review.

(b) Advice Related to Sentencing

Casarrubia-Perez next contends that his trial counsel was ineffective in advising Casarrubia-Perez that "he would receive a 0 to 4 year sentence." We find that the record on direct appeal is sufficient to review this claim. We further find that this claim is refuted by the record.

During the plea hearing, the following colloquy occurred between the court and Casarrubia-Perez:

THE COURT: Do you understand that, by pleading no contest, I will treat that the same as a plea of guilt for purposes of sentencing? Do you understand that?

- 7 -

[Casarrubia-Perez:] Yes, sir.

THE COURT: Do you understand that it's a Class IIA felony, punishable by up to twenty years in prison; minimum period of incarceration is zero? Do you understand that?

[Casarrubia-Perez:] Yes, sir.

THE COURT: Do you understand the Court, in its discretion, can sentence you to a lesser term than the maximum, or you could even be considered for probation? I'm not promising you any specific sentence at this time because I simply do not know what the sentence will be yet. Do you understand that?

[Casarrubia-Perez:] Yes, sir.

. . . .

THE COURT: . . . Do you wish to step aside and visit privately or confidentially with your attorney regarding anything I've asked you? . . .

[Casarrubia-Perez:] No.

THE COURT: All right. Very good. Has anyone promised you anything in return for your plea here today that we have not discussed on the record here in open court today?

[Casarrubia-Perez:] No sir.

Here, during the plea hearing, as recited above, Casarrubia-Perez represented to the court that he had not been promised anything other than what was encompassed in the plea agreement discussed in open court. When allegations of ineffective assistance are affirmatively refuted by a defendant's assurances to the sentencing court, there is no basis for relief. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). In making this decision, the court cited to a prior opinion, where it had stated:

If the dialogue which is required between the court and the defendant . . . all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*Id.* at 118-19, 835 N.W.2d at 58 (citing *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)).

Having determined that Casarrubia-Perez' assurances to the district court during the plea hearing affirmatively refutes his claim that counsel advised him that he would receive a lower sentence, this claim is refuted by the record and is not preserved for postconviction review.

## VI. CONCLUSION

Having determined that the sentence imposed did not constitute an abuse of discretion, that Casarrubia-Perez' claim that his trial counsel was ineffective for failing to depose unnamed "witnesses" was not pled with sufficient particularly, and that his claim that trial counsel was ineffective for advising him that "he would receive a 0 to 4 year sentence" is refuted by the record, we affirm Casarrubia-Perez' conviction and sentence.

AFFIRMED.